
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 18, 2017 at Knoxville

## STATE OF TENNESSEE v. CHRYSTAL TOLLISON

**Appeal from the Criminal Court for White County**
**No. CR-6506     David Patterson, Judge**

---

### No. M2016-00593-CCA-R3-CD

---

The defendant, Chrystal Tollison, appeals her White County Criminal Court guilty-pleaded conviction of child neglect, claiming that the trial court erred by denying her bid for judicial diversion. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Michael J. Rocco, Sparta, Tennessee, for the appellant, Chrystal Tollison.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Phillip Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Originally charged with aggravated child abuse, a Class A felony, the defendant pleaded guilty to the lesser included offense of child neglect, with the length and manner of service of the sentence to be determined by the trial court following a sentencing hearing. The State summarized the facts of the offense at the guilty plea submission hearing:

> The [S]tate would show [that on August 11, 2013] officers with the Sparta Police Department responded to an apartment complex here in Sparta, Tennessee. Along with the TBI, an investigation was conducted on the injuries sustained by a child, date of birth 12/11/2012. Those injuries included subdural hem[a]toma and retinal hemorrhaging. The child

was taken to Vanderbilt Hospital, where she was seen by Dr. Verena Brown.

A history of [the defendant] the previous forty[-]eight hours leading up to the date of [the offense] indicated that [the defendant] and her child had been at a family garage sale that day, the 10th, that the child was in good health with no medical issues. Brought back to the residence that evening of the 10th and the following morning [the defendant] stated that the child fell off of a bed onto a pile of clothes lying on the floor, sustaining the injuries that were subsequently found at the hospital.

Based on the testimony of the statement, the [S]tate met with both the TBI and the police department and met with Dr. Brown at Vanderbilt and based on her findings, her testimony, the [S]tate would anticipate to be very consistent with non-accidental trauma, based on the age of the child and the lack of any other explained mechanism for the injury.

The trial court accepted the plea and set the case for a sentencing hearing. The defendant indicated an intent to ask the court for judicial diversion, but no application or motion appears in the record on appeal.

At the sentencing hearing, Doctor Jennifer Yates, an occupational therapist, testified that the defendant brought the victim to her clinic for occupational therapy once a week to address "hypertonicity in her left arm." Doctor Yates explained that the hypertonicity caused the victim's arm "to kind of flex or contract in a little bit" and that her therapy was designed "to promote that arm to be as functional as possible." Doctor Yates said that the defendant was very involved in the victim's therapy and that the defendant practiced the therapy techniques with the victim at home. The defendant had missed only a single appointment in six months.

Doctor Yates described the victim as "the happiest little girl" and stated that the victim was "making great progress." She said that her research and experience indicated that "children, especially children who have disabilities make huge regressions in their physical skills whenever they . . . lose a parent." She added that, should the defendant be incarcerated, "it would be detrimental" to the victim because the victim "adores" the defendant and because the defendant "works with [the victim] so hard" on her therapy. Doctor Yates said that the defendant had been proactive in seeking out therapies for the victim.

-2-

During cross-examination, Doctor Yates explained that the victim suffered an injury to the right side of her brain, "which affected her left side of her body, causing increased tone and that's what we're working on in physical therapy and occupational therapy, is helping to normalize that tone as well as just work on developmental skills." Doctor Yates said that the defendant's incarceration would be detrimental to the victim's progress.

The 25-year-old defendant testified that on the day of the offense, she had taken the victim "out of her crib and changed her diaper." The defendant then went to the restroom, and while she was in the restroom, the victim fell off the defendant's bed. The defendant said that she pleaded guilty because she neglected the victim by leaving her unattended on the bed.

The defendant said that, as a result of the injuries she sustained in that fall, the victim "goes to occupational therapy and physical therapy every single week." The defendant said that she performed each of the exercises and stretches on the victim as prescribed by her therapists. As a result, she had seen a "[h]uge improvement" in the victim's abilities. The defendant said that she worked to get the victim enrolled in a local pre-kindergarten program for special needs children and that she took the victim to each of her scheduled doctor's appointments.

The defendant testified that she had been consistently employed since graduating high school and that she was working as a waitress at the time of the sentencing hearing. She said that she had a home in Cookeville where she lived with the victim and her older daughter.

At the conclusion of the hearing, the State argued that a grant of judicial diversion in the defendant's case would depreciate the seriousness of the offense and that a sentence of two years' probation would be more appropriate. The defendant argued that the court should grant diversion because the defendant had accepted responsibility for her actions, had been proactive in the victim's recovery, had maintained employment, and had established a stable home for her two children. The defendant also argued that the imposition of a felony conviction would hinder her efforts at finding suitable employment in the future.

The trial court found that the defendant was amenable to correction, as evidenced by the fact that "she has got her children back home," that she had worked consistently during her adult life, that she had no criminal record, and that she had a "developed" social history. The court observed that the circumstances of the offense were particularly troubling, noting that investigators found the defendant's residence

"cluttered with clothes, old food," and "[s]everal empty alcoholic beverage containers" and that they collected marijuana and a pill crusher from the residence. The court also noted that the victim had to be flown to Vanderbilt Children's Hospital due to the severity of her injuries, which included retinal hemorrhaging in both eyes. The court found a need to deter similar offenses and noted the particular vulnerability of the eight-month-old victim and the severity of her injuries as enhancement factors. The court concluded that a sentence of two years' probation struck the proper balance between the needs of the defendant and the victim in this case and the need for deterrence in the community.

In this timely appeal, the defendant asserts that the trial court erred by denying her bid for judicial diversion, arguing that the trial court failed to weigh and consider all the factors relevant to a determination of judicial diversion and that, as a result, the trial court erred by denying her request for judicial diversion. The State contends that the trial court appropriately considered all the relevant factors and that the court's decision to deny judicial diversion based upon the circumstances of the offense, the deterrence value[,] and the needs of the community" was justified.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709. The *Bise* standard of review applies to "appellate review for a trial court's sentencing decision to either grant or deny judicial diversion," *State v. King*, 432 S.W.3d 316, 325 (Tenn. 2014), and to "questions related to probation or any other alternative sentence," *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

"Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) for a trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* To be eligible or

-4-

"qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. *Id.* § 40-35-313(a)(1)(B)(i)(b), (c). Diversion requires the consent of the qualified defendant. *Id.* § 40-35-313(a)(1)(A). "[A] 'qualified' defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts." *King*, 432 S.W.3d at 326. Following a determination that the defendant is eligible for judicial diversion, the trial court must consider

> "(a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused."

*Id.* (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record." *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)). Adoption of the *Bise* standard of review for judicial diversion "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion." *King*, 432 S.W.3d at 326.

Because the record establishes that the trial court considered each of the factors enumerated in *Parker* and weighed them against each other, placing its findings in the record, as required by *Electroplating, Inc.*, we "apply a presumption of reasonableness" and will "uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id.* at 327. Based upon our review of the record, we conclude that there was substantial evidence to support the denial of judicial diversion in this case. The record establishes that the eight-month-old victim suffered serious bodily injuries, including a retinal tear in her right eye, retinal hemorrhaging in both eyes, and a "rotational injury" in her brain, while in the care of the defendant and that those injuries have resulted in the victim's being permanently disabled. Although the defendant maintained that the victim's injuries occurred when she fell from the defendant's bed, the official version of events included in the presentence report indicates that the treating physician advised detectives "that the injuries sustained by [the victim are] not consistent with a short fall from a bed" but were instead "consistent with acute inflicted injury." The defendant's efforts at improving her life and helping the victim are

-5-

laudable, but the record is clear that the defendant has already been granted considerable leniency in this case. The plea agreement in this case allowed the defendant, who was originally charged with aggravated child abuse, to plead guilty to a greatly reduced charge of child neglect. The charged offense, a Class A felony, carried a potential sentence of 15 to 25 years with a 70 percent release eligibility percentage. *See* T.C.A. §§ 39-15-402(b); 40-35-112(a)(1); 40-35-501(k)(6)(A). In contrast, the conviction offense, a Class E felony, carries only a potential sentence of 1 to 2 years with a 30 percent release eligibility percentage. *See id.* §§ 39-15-401(b); 40-35-112(a)(5); 40-35-501(c). That the defendant received a very beneficial plea agreement "colors the nature and circumstances of the *conviction offense*." *State v. John Clayton Fields*, No. M2014-01691-CCA-R3-CD, slip op. at 9 (Tenn. Crim. App., Nashville, July 6, 2015), *perm. app. denied* (Tenn. Oct. 23, 2015) (emphasis in original). We have consistently "recognized that leniency in the terms of a plea agreement may support the imposition of a formidable sentence." *See id.*, slip op. at 9-10; *see also, e.g., State v. Krystal Bowman*, No. E2011-01906-CCA-R3-CD (Tenn. Crim. App., Knoxville, Aug. 13, 2012); *State v. Larry J. Coffey, Jr.*, No. E2008-00087-CCA-R3-CD (Tenn. Crim. App., Knoxville, Feb. 18, 2009). Moreover, the sentence imposed in this case, two years' full probation, cannot be described as "formidable." Under these circumstances, the trial court did not abuse its discretion by denying judicial diversion.

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE